# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Tolavius Timmons,

    Plaintiff

v.

Bonnie Polley, et al.,

    Defendants

Case No.: 2:17-cv-00361-JAD-NJK

**Order Screening the Second-Amended Complaint**

Plaintiff Tolavious Timmons brings this pro se civil-rights action under 42 U.S.C. § 1983 based on events that he claims occurred while he was an inmate at the Clark County Detention Center (CCDC). I now screen his second-amended complaint, allowing some claims to proceed, while dismissing others—some with leave to amend and others with prejudice.

## Background

Timmons was a pretrial detainee at CCDC since at least June of 2016 until he was recently transferred to High Desert State Prison (HDSP).[1] I previously screened his first-amended complaint, which included three counts.[2] In that screening order, I concluded that Timmons could proceed with the following claims:

- The Count I free-exercise-of-religion claim against defendant Polley;[3]

- The Count I conditions-of-confinement claim against defendants Polley, Aramark, the CCDC Dietician, Correctional Officer (CO) #J149450, CO Verduzco 7647, CO Estrada, Sergeant Cadet, and Sergeant Massucci;

---

[1] ECF No. 8 at 1; ECF No. 10.

[2] ECF No. 6.

[3] The complaint and therefore the docket incorrectly spell Polley's name as "Polly." I direct the Clerk of Court to correct the spelling on the docket.

- The Count II Equal Protection Clause claims against CO Lewis, CO #J149450, CO Estrada, and CO Verduzco 7647;

- The Count III free-exercise claims against defendants Polley, CO Verduzco 7647, and Sergeant 8593; and

- The Count III retaliation claims against defendants Polley, CO Verduzco 7647, and Sergeant 8593.[4]

Because Timmons has included substantially the same claims against these defendants in his second-amended complaint,[5] these claims may proceed.

In his second-amended complaint, Timmons sues Chaplain Bonnie Polley, food-service provider Aramark, the Las Vegas Metropolitan Police Department (LVMPD), Captain Andrew Peralta, the Dietician and Food Services Director of CCDC, CO Estrada, CO J149450, CO Verduzco, Sergeant Cadet # 10102, Sergeant 8593, Sergeant Massucci, CO Lewis, Clark County, Sheriff Joe Lombardo, CO Smith, CO # 5577, FSD Peggy Martinez 2017, CO # 2899, and Lieutenant Taylor.[6] Timmons adds new allegations in the second-amended complaint, and I now screen these new allegations.

**Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[7] In this screening, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek

---

[4] ECF No. 6 at 14–15.

[5] ECF No. 8.

[6] *Id.* at 1–5.

[7] *See* 28 U.S.C. § 1915A(a).

monetary relief from a defendant who is immune from such relief.[8]  All or part of the complaint may be dismissed sua sponte if the prisoner's claims lack an arguable basis in law or fact.  This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[9]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief.[10]  In making this determination, the court must take all allegations of material fact as true and construe them in the light most favorable to the plaintiff.[11]  Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers,[12] but a plaintiff must provide more than mere labels and conclusions.[13]  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[14]  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[15]

---

[8] *See id.* § 1915A(b)(1)(2).

[9] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[10] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[11] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[12] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[13] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[15] *Id.*

**Discussion**

In his second-amended complaint, Timmons adds claims to Counts I and II for violations of the Americans with Disabilities Act (ADA) and for the right to petition the government. [16] He also adds claims for violation of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) to Counts I, II, and III.[17] And Timmons has added additional defendants and allegations, including Counts IV, V, and VI. I now address these new allegations. [18]

## I.     ADA claims

In Count I, Timmons alleges that, as a person with physical, social, mental, and emotional disabilities, he was treated differently through "discriminatory situational and social ethics and practice" by CCDC staff, agents, officers, and/or subcontractors.[19] This appears to be a reference to his allegations that Muslim inmates did not receive the proper amount of food during Ramadan,[20] which he alleges violated his rights under the ADA.[21] In Count II, Timmons alleges that some of the porters were taking food off the Halal food trays and eating it themselves and that this violated his rights under the ADA because the porters did so due to his social, physical, mental, and emotional disabilities.[22]

---

[16] ECF No. 8 at 6, 10.

[17] Id. at 6, 10, 13.

[18] The facts discussed throughout this order are allegations taken from the Timmons's complaint and are not intended as findings of fact.

[19] ECF No. 8 at 9.

[20] *Id.*

[21] *Id.* at 6.

[22] *Id.* at 11–12.

The ADA applies in the prison context.[23]  Under the statute, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[24]  The ADA defines an individual with a disability as someone who has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."[25]

To state a claim for disability discrimination under Title II of the ADA, a plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was *because of* the plaintiff's disability.[26]

I find that Timmons has not stated any colorable ADA claims.  Timmons makes the vague and conclusory allegations that he has disabilities, but he does not allege facts sufficient to show that he is disabled.  More importantly, Timmons does not allege facts sufficient to show that the allegedly improper conduct regarding food was *because of* his disabilities.  Indeed, he alleges that this conduct applied not just to him, but to other Muslim inmates as well.  So, based on Timmons's own allegations, the allegedly improper conduct was not based on singling him out because of a disability.  His conclusory allegations that he was discriminated against based

---

[23] *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010).

[24] 42 U.S.C. § 12132.

[25] *Id.* § 12102(2)(A).

[26] *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

on his purported disabilities do not save this claim.  I therefore dismiss the ADA claims with prejudice, as amendment would be futile.

**II.      RLUIPA claims in Counts I, II, and III**

Counts I and II allege that defendant Polley refused to take action to enable Timmons to obtain sufficient Halal food during Ramadan in 2016 and that Muslim inmates like Timmons were therefore forced to choose between obtaining an adequate amount of food and observing Ramadan, which is a major pillar of their faith.[27]  He alleges that this conduct violated RLUIPA.[28]  Count III alleges that jail officials prevented Timmons from attending Muslim Jumah services and denied him access to religious materials.[29]

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), which governs religious exercise by institutionalized persons, provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person–(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.[30]

A plaintiff has the initial burden of proving that the prison's actions implicated his religious exercise and that the prison's actions substantially burdened that exercise of religion.[31]  Once the plaintiff makes that prima facie showing, the burden shifts to the defendant to prove that its

---

[27] ECF No. 8 at 6–9, 11.

[28] *Id.* at 6, 10.

[29] *Id.* at 13–21.

[30] 42 U.S.C. § 2000cc-1(a)(1)–(2).

[31] *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015).

1  actions are in furtherance of a compelling governmental interest and are the least restrictive

2  means of furthering that interest.[32]

3       I find that Timmons has stated a colorable RLUIPA claim against defendant Polley by

4  alleging that her unwillingness to ensure that he received adequate food during Ramadan forced

5  him to choose between adequate nutrition and observing his faith.  I also find that Timmons has

6  stated colorable RLUIPA claims against defendants Polley, CO Verduzco 7647, Sergeant 8593,

7  and CO Lewis based on the allegation that Timmons was not permitted to attend Jumah services

8  and receive certain religious materials.  Therefore, Timmons's RLUIPA claims will proceed

9  against these defendants.

10 **III.    Right to petition the government**

11      In Counts I and III, Timmons has added allegations that his right to petition the

12 government was violated.[33]

13      **A.    Count I**

14      Count I appears to be based on the allegation that Timmons was denied details of the

15 calorie and nutritional information for the food he was being served.[34]  He alleges that this was

16 done to deny him evidence to petition the government for redress.[35]  I interpret these allegations

17 as an access-to-the-courts claim.  Prisoners have a constitutional right of access to the courts.[36]

18 To establish a violation of this right, a prisoner must establish that he has suffered an actual

19 injury—a jurisdictional requirement that flows from the standing doctrine and may not be

20

---

21 [32] *Id.* at 863.

   [33] ECF No. 8 at 6, 13.

22 [34] *Id*. at 9.

23 [35] *Id.*

   [36] *See Lewis v. Casey*, 518 U.S. 343, 346 (1996).

waived.[37]  An "actual injury" is "actual prejudice with respect to contemplated or existing

litigation, such as the inability to meet a filing deadline or to present a claim."[38]

I find that Timmons has failed to state a colorable claim.  He has not alleged facts

sufficient to show that he has suffered an actual injury.  It is clear from the second-amended

complaint and my decision to permit the conditions-of-confinement claims to proceed that

Timmons has not been prevented from presenting a claim based on the alleged inadequacy of the

food.  I therefore dismiss this claim with prejudice, as amendment would be futile.[39]

## B.    Count II

I also find that Timmons fails to state a colorable claim in Count II for a violation of his

right to petition the government.  Count II appears to be based on the allegations that Timmons's

grievances were not handled properly.[40]  There is no constitutional right to a particular

administrative-grievance process, and a plaintiff may not pursue a claim for denial of the right to

petition based on the failure of staff to respond to his grievances in a particular way or based on

the rejection of his grievances.[41]  I therefore dismiss this claim with prejudice, as amendment

would be futile.

---

[37] *Id*. at 349.

[38] *Id*. at 348.

[39] *See Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (stating that leave to amend "is properly denied . . . if amendment would be futile").

[40] *Id.* at 11.

[41] *See Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir. 1988).

**IV.    Relgion claims against Captain Peralta in Count III**

The First Amendment to the United States Constitution prohibits Congress from making any law respecting the establishment of religion or prohibiting its free exercise,[42] and the U.S. Supreme Court has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion."[43]  "In general, a plaintiff will have stated a free exercise claim if: (1) 'the claimant's proffered belief [is] sincerely held; and (2) 'the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'"[44]  Courts evaluate prison regulations alleged to infringe on constitutional rights under a four-part "reasonableness" test, which asks "(1) whether there is a 'rational connection' between the regulation and a 'legitimate and neutral' government objective; (2) whether 'alternative means of exercising the right' remain available to inmates; (3) 'the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources;' and (4) whether 'the existence of obvious, easy alternatives' to the regulation indicate that it 'is an "exaggerated response" to prison concerns.'"[45]

In my earlier screening order, I dismissed Timmons's claims against Cpt. Peralta because he had not adequately alleged that Peralta took part in any violations of his constitutional rights.[46]  I informed Timmons that, in order to state a colorable claim, he would need to include *factual* allegations to support his claim and conclusory assertions would not be sufficient.[47]

---

[42] U.S. Const. amend. I.

[43] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

[44] *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015).

[45] *Crime Justice & Am., Inc. v. Honea*, 876 F.3d 966, 972 (9th Cir. 2017) (quoting *Turner v. Safley*, 482 U.S. 78, 89–90 (1987)).

[46] ECF No. 6 at 10–11.

[47] *Id.* at 2.

I find that Count III, as amended, states colorable free-exercise and RLUIPA claims against Peralta by alleging that he signed refusals on two occasions that prevented Timmons from having religious books.[48]  Therefore, these two claims against Peralta in Count III will proceed.

**V.      Count IV: religion and conditions-of-confinement claims**

**A.      Municipal and supervisor liability**

In my original screening order, I explained that, in order to state a § 1983 claim against a municipality, like Clark County, a plaintiff must allege that there is a policy statement, ordinance, regulation, or government custom that causes the plaintiff to suffer a constitutional violation.[49]  A municipality cannot be held liable under § 1983 on a respondeat superior theory, so allegations that a municipality's employees violated a plaintiff's constitutional rights do not state a colorable claim.[50]  However, a municipaility can be held liable for its officer's constitutional violations if they are "directly attributable to the [municaplity's] policy or custom."[51]  To state such a claim, a plaintiff must go beyond bare assertions and plead facts sufficient to show that there is a policy.[52]  I previously concluded that Timmons had not stated a colorable claim because he merely asserted that Clark County has a policy of discriminating

---

[48] *Id.* at 17.

[49] ECF No. 6 at 11.

[50] *Monell v. N.Y.C. Dep't of Soc. Servs*, 436 U.S. 658, 690–91 (1978).

[51] *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008) (citing *Monell*, 436 U.S at 691–94).

[52] *Iqbal*, 556 U.S. at 680–81.

against Muslims.[53]  I informed Timmons that he would have to allege true facts showing that Clark County promulgated a rule, policy, or custom that caused the violation of his rights.[54]

Count IV appears to be Timmons's response to my earlier screening order and an attempt to extend his claims for condition-of-confinement, free-exercise, and RLUIPA violations alleged in Counts I, II, and III to Clark County.  In addition, Timmons is now attempting to extend these claims to Sheriff Lombardo and the LVMPD, who were not named as defendants in the first-amended complaint**.**  The LVMPD is a political subdivision of the state and may sue or be sued in its own name.[55]  Thus, as with a municipality like Clark County, a plaintiff may state a colorable claim against the LVMPD if he properly alleges facts that would be sufficient to show municipal liability.

Timmons alleges the following in the second-amended complaint: he did not receive adequate food during Ramadan 2016.[56]  He would receive a quantity of food equal to only one meal per day or even less.  Sheriff Lombardo, Cpt. Peralta, the LVMPD, and Clark County worked together to develop "the policy" that currently exists and are thus responsible for Timmons's hardships and the RLUIPA violations.  The fact that inmates were underfed during Ramadan was not a new situation and was the result of a conscious decision that "top officers" and Aramark made after the issue was brought to their attention.  These officers include Sheriff Lombardo, Cpt. Peralta, and Lt. Zolman, who, along with Clark County and LVMPD, are

---

[53] ECF No. 8 at 11–12.

[54] *Id.*

[55] Nev. Rev. Stat. § 280.280(4).

[56] ECF No. 8 at 7.

1  responsible for the continued "policy" in which Muslims are underfed, discriminated against, and

2  subjected to pain and suffering without any means to obtain redress.[57]

3          In addition, Count IV alleges the following: Clark County, LVMPD, Sheriff Lombardo,

4  Cpt. Peralta, and Bonnie Polley have placed substantial burdens on Timmons's ability to exercise

5  his religion freely.[58]  As a Muslim, he has been stripped of his rights by the "policy" of these

6  defendants and their disregard for his rights.[59]  Clark County has failed to adequately train or

7  enforce training that relates to the development and application of LVMPD policy, resulting in

8  Sheriff Lombardo failing to adequately train Cpt. Peralta.  He in turn has failed to properly train

9  the lower-ranking lieutenants, affecting the training of sergeants, officers, and, employees under

10  the training standards defined in Chapter 289 of the Nevada Administrative Code (NAC).

11  Timmons claims that all of these failures resulted in the deprivation of his civil rights and all of

12  the officers listed as defendants violated their oaths of office and minimum training standards

13  under the NAC and Nevada Revised Statutes.

14          During Ramadan, Polley merely provided Muslim inmates with the same sack lunch

15  received by inmates returning late from court and newly booked inmates, which is not Halal.[60]

16  Even though LVMPD staff had the means to prepare adequate meals for Ramadan, they chose

17  not to.  However, people of other religions had adequate meals for their religious dietary

18  restrictions.  Officers would deflect complaints back to Polley and state that anything relating to

19  "policy policing" had to be run up the chain of command to superior officers.  Timmons also

20

21  ─────────────────────

22  [57] *Id.* at 8, 11.

    [58] *Id.* at 18.

23  [59] *Id.*

    [60] *Id.* at 19.

1 alleges that he was "systematically" excluded from Jumah services in retaliation for his

2 complaints.[61]

3       Timmons's vague and conclusory allegations that some of the defendants worked

4 together to create a "policy" of underfeeding Muslims, discriminating against Muslims, and

5 subjecting them to pain and suffering without redress are insufficient to state a policy-based

6 claim. He has not alleged facts sufficient to show that there are such formal policies, much less

7 facts showing that the specified individuals created such a policy. And he also has not alleged

8 facts sufficient to show a *policy* of excluding Muslims from Jumah services.

9       However, I find that, liberally construed, the second-amended complaint adequately

10 alleges a *custom* by Clark County and LVMPD of failing to provide adequate nutrition for

11 Muslim inmates during Ramadan, forcing such inmates to choose between eating and complying

12 with their religious beliefs. According to the allegations, the practice of depriving Muslim

13 inmates of adequate was ongoing and caused Timmons to go hungry and affected his ability to

14 celebrate Ramadan in accordance with his religious beliefs. Therefore, the conditions-of-

15 confinement, free-exercise, and RLUIPA claims may proceed against Clark County, the

16 LVMPD, Sheriff Lombardo, and Captain Peralta based on their alleged custom of denying

17 Muslim inmates adequate amounts of Halal food during Ramadan.

18       To the extent that Timmons is attempting to assert a claim based on a failure-to-train

19 theory, he fails to state a colorable claim. Inadequate training may be the basis for a § 1983

20 claim only under limited circumstances.[62] Merely alleging that the existing training program for

21

22

23 _____

[61] *Id.* at 21.

[62] *City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989).

a class of employees, such as police officers, is inadequate does not state a claim.[63]  A plaintiff

must allege facts sufficient to show that the training program was inadequate in relation to the

tasks the particular officers must perform.[64]  He also must allege facts sufficient to show that the

failure to train caused his constitutional injury; the mere fact that an employee makes a mistake

or fails to comply with his training or that the training may occasionally be negligently

administered is not sufficient to show causation.[65]  In addition, to be liable for inadequate

training, a supervisor's or municipality's failure to train must reflect deliberate indifference to

people's constitutional rights.[66]  To allege deliberate indifference, a plaintiff must allege facts

sufficient to show that the inadequacy of the training was the result of a deliberate and conscious

choice of the supervising defendant despite knowing of the inadequacy of the training and risk to

inmates.[67]

Timmons pleads only the conclusory and vague allegation that there was a failure to

train.  As I previously informed Timmons, in order to state a colorable claim, he must allege

facts, not conclusions.[68]  He does not allege what training was inadequate in relation to particular

tasks, citing instead the entire NAC chapter that addresses police training.  He does not allege

facts sufficient to show that any particular relevant training was inadequate or which defendants,

if any, were responsible for that inadequate training.  In addition, he does not allege facts

sufficient to show that it was inadequate training that caused a particular constitutional violation.

---

[63] *Id.* at 389.

[64] *Id.* at 390.

[65] *Id.*

[66] *Id.* at 391–92 (municipality deliberate indifference); *Canell v. Lightner*, 143 F.3d 1210, 1213–14 (9th Cir. 1998) (supervisor deliberate indifference).

[67] *Canell*, 143 F.3d at 1213–14.

[68] ECF No. 6 at 2.

Rather, Timmons alleges that everyone knows that people need a minimum amount of food to survive and that there was no way that any of the defendants could be ignorant to the issues he brought to their attention regarding the inadequate amount of food.[69]  Timmons also does not allege facts sufficient to show deliberate indifference by any of the defendants to any particular training inadequacy.  Thus, Timmons fails to state a colorable failure-to-train claim against any of the defendants, including the municipal defendants.  I therefore dismiss the failure to train claims without prejudice.

### B.    Claims against Lieutenant Taylor

Count IV also adds free-exercise and RLUIPA claims against Lt. Taylor.  Timmons alleges that, after Cpt. Peralta signed off on the denial of his religious books, Timmons told Taylor about the denial of these materials and provided him with grievances.[70]  Taylor took the grievances and told him that he would look into the denial of his books.  Taylor merely held onto the grievances for a couple of days and then placed them on Timmons's desk while he was sleeping, without taking any corrective action.

A defendant is liable under § 1983 "only upon a showing of personal participation by the defendant."[71]  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under [§]1983."[72]  I find that Timmons states colorable free-exercise and RLUIPA claims against Taylor, who allegedly knew that

---

[69] ECF No. 8 at 12.

[70] *Id*. at 20.

[71] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[72] *Id*.; *see also Iqbal*, 556 U.S. at 676 (holding that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

religious materials were being withheld from Timmons but refused to rectify the matter. These claims will thus proceed against Lt. Taylor.

## VI.    Count V

Count V appears to be based on events that allegedly took place after Timmons filed the first-amended complaint. Timmons alleges the following: During Ramadan 2017, he was underfed for a second Ramadan by Aramark and LVMPD.[73] LVMPD officers replaced the sandwiches in his sack lunch with two ham sandwiches, which violates Halal dietary restrictions. Timmons tried to report this to higher officials but was impeded. He asked for someone to come and inspect the meat in order to have a record of it, but nobody came to take photos or inspect the meat.

Timmons submitted a number of grievances.[74] In early March 2017, he sent a kite saying that he was not receiving Halal meal trays.[75] Kitchen officer #5577 responded to the kite by telling Timmons to write to Bonnie Polley. Several days later, Timmons sent a request to Polley stating that he needed to be placed back on the Halal diet and that he had not been able to eat properly for the past several days because he was restricted from the commissary. Polley responded that he was going to remain restricted from obtaining food from the commissary and that he still was receiving Halal trays. But this was not true. Timmons then wrote a grievance to Polley explaining again that he was not receiving a Halal tray and that this was his third kite communicating that he was not being fed properly. Polley responded by writing "halal tray."[76]

---

[73] ECF No. 8 at 25.

[74] *Id.*

[75] *Id.* at 26.

[76] *Id.* at 27.

It took six days to get the Halal tray through the grievance system, and Timmons had to scrounge during that time to have some form of sustenance.

After complaining to officers, including officer # 5577, in mid-April 2017, Timmons filed a grievance saying that it was not fair that, during Passover, he was not being provided with the bread that usually came with the Halal tray.[77]   The Halal/Kosher trays were being managed by a Jewish rabbi.  In observance of Passover, Jewish inmates were receiving unleavened bread in the Kosher tray.  To accomodate the holiday, Muslim inmates were also not served leaven bread, but they did not receive unleven bread either.  Timmons was therefore not able to exercise his own religious beliefs about his own diet.

In late May 2017, Timmons filed a grievance itemizing the food he had received on the first three days of Ramadan and stating that it was well under a 2,000-calorie diet.[78]   He requested nutritional information for the food he was being given.  Polley responded that she would come see him, but she never did.[79]   Sergeant 12899 also told him that his concerns were being taken seriously.  However, he was not provided the nutritional information and no corrective action was taken.  Instead, on the night that he submitted the grievance itemizing the food he was receiving, he received ham sandwiches for his Ramadan meal.  Timmons filed an emergency grievance regarding these sandwiches with Lt. Taylor.  The kite was signed by officer # 8841.  Timmons immediately showed the sandwiches to officer # 16047, who called down to the kitchen and then claimed that he was told by the kitchen that the ham was actually a soy

---

[77] *Id.*

[78] *Id.*

[79] *Id.* at 28.

product, even though kitchen personnel are not in the kitchen at that hour. No one ever came to look at his sandwiches.

The next day, a sergeant told Timmons that the meat was turkey, but it was not turkey.[80] Timmons asked that a photo be taken of the meat to document it, and he placed the meat on each page of his grievance so that he would have evidence to document his claim. However, both the white and yellow copies of the grievance were returned to him.[81] The LVMPD would not document his claims the way they document other incidents in the facility.[82] For instance, when inmates are hurt by other inmates, LVMPD immediately takes photos and video to make a record, but they would not make such a record for Timmons.[83] Peggy Martinez, the food-services director (FSD), responded to Timmons by telling him that nobody was messing with his food and that CCDC serves turkey, turkey bologna, and turkey salami but no form of ham.[84] Timmons attempted to escalate the matter above the sergeant level to a lieutenant but was redirected to someone who would not look at the food he received, and the lieutenant was never given the grievance, thus denying Timmons the right to petition for redress.

Timmons submitted another grievance at the end of May concerning the ham.[85] Officer # 5577 replied that CCDC was a pork-free facility, but no one came to examine the meat at issue.

---

[80] *Id.*

[81] *Id.* at 28–29.

[82] *Id.* at 28.

[83] *Id.* at 31.

[84] *Id.* at 29.

[85] *Id.*

In this grievance, Timmons explained that he had been retaliated against by not being fed.[86] After his complaints, he was not sent Ramadan food and was denied the daily trays.

In early-June 2017, Timmons submitted a grievance to Polley, explaining that he was being intermittently fed and that no one was inspecting his food or fixing the situation.[87]  In particular, he explained that he was getting only one meal in the evening, not the double meal required after fasting during the day.  In addition, he said that he was being singled out and made to follow rules that others do not have to follow; everyone else in the dorm was allowed to save food, but the Muslim inmates were not.  This grievance was given to Martinez, who told him that he was receiving what had been approved by the facility.

I construe these allegations as claims for Eighth Amendment conditions of confinement, First Amendment free exercise of religion, RLUIPA, Fourteenth Amendment equal protection, First Amendment retaliation, and redress of grievances.

### A.      Eighth Amendment conditions of confinement

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[88]  Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.[89]  However, prison officials have a duty to ensure that prisoners are provided adequate food.[90]  To challenge conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and

---

[86] *Id.* at 30.

[87] *Id.*

[88] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

[89] *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

[90] *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

subjective test.[91]  The objective prong requires a showing that the deprivation was sufficiently serious to form the basis for an Eighth Amendment violation.[92]

As to the subjective prong, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement.[93]  To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[94]  Mere negligence is insufficient to show a Eighth Amendment violation.[95]

Liberally construing the second-amended complaint, I find that Timmons has stated a colorable conditions-of-confinement claim against Polley, kitchen officer 5577, and Martinez. According to the allegations, Timmons was served inadequate quantities of food and these defendants knew of this problem and failed to correct it.  Therefore, this claim will proceed against them.

### B.     RLUIPA and First Amendment free exercise

I find that Timmons has stated colorable RLUIPA and free-exercise claims against Polley, kitchen officer 5577, and Martinez.  Timmons alleges that he was denied adequate Halal food during Ramadan 2017.  This is sufficient to state a colorable claim at the screening stage, and this claim will therefore proceed against these defendants.

---

[91] *Id.*

[92] *Id.* at 731.

[93] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[94] *Id.* at 837.

[95] *Id.* at 835–36.

## C.     Equal protection

In order to state an equal-protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment.[96]  The Equal Protection Clause protects prisoners from intentional discrimination based on their religion.[97]  Conclusory allegations of motive are insufficient; specific factual allegations are required.[98]

In *Village of Willowbrook v. Olech*, the Supreme Court addressed "whether the Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group."[99]  The Court ruled in the affirmative and "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[100]  But the Court later clarified that the class-of-one theory does not apply when state actions "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments."[101]  "[A]llowing

---

[96] *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[97] *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

[98] *Jeffers v. Gomez*, 267 F.3d 895, 913–14 (9th Cir. 2001).

[99] 528 U.S. at 564.

[100] *Id.*; *see also Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 601 (2008) (recognizing that an equal-protection claim may be maintained in some circumstances even if the plaintiff does not allege discrimination based on membership in a suspect class, but instead claims that she has been irrationally singled out as class of one).

[101] *Engquist*, 553 U.S. at 603 (holding that the class-of-one theory does not apply in the public employment context); *see also Towery v. Brewer*, 672 F.3d 650, 660–61 (9th Cir. 2012).

a challenge based on the arbitrary singling out of a particular person would undermine the very

discretion that such officials are entrusted to exercise."[102]  And as the Court has recognized, the

problem with allowing class-of-one claims to go forward in a context where government officials

are necessarily making subjective, individualized decisions is that the government will be forced

to defend a multitude of such claims and courts will be obliged to go through them in search of

the rare "needle in a haystack."[103]

Where a class-of-one equal-protection claim is at issue, the plaintiff must identify the

group of individuals with whom he is similarly situated, identify the allegedly intentional and

disparate treatment, and allege that there was no rational basis for the different treatment.[104]  I

find that Timmons states two colorable equal-protection claims due to alleged discrimination on

the basis of his religion.  First, he alleges that Muslims did not have their religious dietary needs

accommodated during Ramadan 2017, while Jewish inmates did have their religious dietary

needs accommodated during Passover.  Based on these allegations, this equal-protection claim

will proceed against Polley, kitchen officer 5577, officer 12889, and Martinez.  Second,

Timmons states a colorable equal-protection claim by alleging that Muslim inmates were not

allowed to store their food, but non-Muslims were.  This claim will proceed against Polley,

kitchen officer 5577, and Martinez.

Timmons also appears to be trying to state a class-of-one claim based on his allegations

that LVMPD officers failed to document his claims about the ham.  But prisoners and non-

---

[102] *Enquist*, 553 U.S. at 604 (recognizing that a traffic officer does not violate the Equal Protection Clause merely because the officer gives tickets to only some speeding drivers).

[103] *Id.* at 608–09.

[104] *Gerhart v. Lake County*, 637 F.3d 1013, 1022 (9th Cir. 2011); *Chappell v. Bess*, No. 2:01-CV-01979 KJN P, 2012 WL 3276984, at *19–21 (E.D. Cal. Aug. 9, 2012).

prisoners are not similarly situated,[105] and the decision whether to visually document misconduct claims by inmates appears to be a discretionary, subjective, and individualized decision, which would not be subject to a class-of-one analysis. Thus, Timmons cannot state a colorable class-of-one equal-protection claim, and I dimiss this claim with prejudice, as amendment would be futile.

### D. First Amendment retaliation

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege facts sufficient to show: "(1) a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[106] Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.[107]

I find that Timmons has stated a colorable retaliation claim against Polley, kitchen officer 5577, officer 12889, and Martinez. Liberally construed, the second-amended complaint alleges that Timmons was served pork because he complained and filed a grievance regarding the caloric content of his food. And because Timmons complained further, he was denied the Halal daily trays. Therefore, the retaliation claims will proceed against these defendants.

---

[105] *Parks v. Chappell*, No. C-13-4048 EMC (PR), 2014 WL 2811114, at *2 (N.D. Cal. June 20, 2014); *Levingston v. Plummer*, No. C 94-4020 VRW, 1995 WL 23945, at *1 (N.D. Cal. Jan. 9, 1995).

[106] *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2004).

[107] *Id.* at 568–69.

**E.    Redress of grievances**

Timmons's redress-of-grievances claim appears to be based on his frustration with the process for addressing his grievances and being unable to escalate his grievances to higher levels.  As discussed above, prisoners do not have a constitutional right to a particular grievance process.  I therefore dismiss this claim with prejudice, as amendment would be futile.

**VII.    Count VI**

Count VI alleges the following: LVMPD, Sheriff Lombardo, Cpt. Peralta, Clark County, and its officers and/or agents, employees, and sub-contractors have failed to properly ensure that their staff are properly trained in or are applying their training regarding the civil and human rights of detainees.[108]  Timmons claims that LVMPD underfed him during Ramadan 2017 by feeding him regular sack lunches that were not Kosher or Halal.  Sometimes, he was not fed at all.[109]  In addition, Timmons claims LVMPD will not permit Timmons to participate in Islamic services.  It also hindered from obtaining literature that differed from the religious ideology the jail provides.  And LVMPD sought ways to deny Timmons from benefitting from programs like other inmates.  Further, the policy that is currently in place does not permit a person to petition for government redress because any low-level officer can prevent an inmate from escalating a problem and then retaliate against the inmate.

Timmons also alleges that LVMPD discriminates against Muslims by design.[110]  For example, for Muslim inmates to have an Islam 101 class in the South Tower of CCDC, a unit must have five requesting inmates.  The same is true for Muslim Jumah services.  However, for

---

[108] ECF No. 8 at 32.

[109] *Id.*

[110] *Id.* at 33.

24

Buddhists and Bible study, the number of requests from all units is considered, not just the number of request from one unit. Similarly, for other classes, such as G.E.D. classes, individuals from multiple floors are gathered to participate in classes, but the same will not be done for Islam 101 classes.

In the North Tower, all Muslims from multiple floors are gathered to participate in Jumah, but this right was not afforded to South Tower inmates.[111] LVMPD has the ability to move South Tower Muslims over to the North Tower for Jumah service. LVMPD has not permitted Timmons to participate in Islamic services and has made no attempt to fix or correct the issues. He alleges that the defendants encourage the abuse of inmates' rights and approve of oppressive tactics. Timmons states that they are guilty by association and because they have been made aware of these same issues in the past by other inmates and acquiesce to them continuing.[112] These same issues were presented to LVMPD officers and employees in 2016 as well.[113]

I construe these allegations as claims for Eighth Amendment conditions of confinement, First Amendment free exercise, RLUIPA, Fourteenth Amendment equal protection, and redress of grievances. I first address these claims in a context of whether Timmons has alleged sufficient facts to show that these violations resulted from policies, customs, or a failure to train.

**A.      Policies and customs**

As to Timmons's allegations that he was underfed during Ramadan 2017, I find that he has stated colorable conditions-of-confinement, free-exercise, and RLUIPA claims against Clark

---

[111] *Id.* at 34.

[112] *Id.*

[113] *Id.*

County, LVMD, Cpt. Peralta, and Sheriff Lombardo for the same reasons that I found these claims colorable in Count IV for comparable allegations stemming from Ramadan 2016. Liberally construed, the second-amended complaint adequately alleges a custom of failing to provide adequate Halal nutrition to Muslim inmates during Ramadan, causing a violation of Timmons's rights during Ramadan 2017.

I also find that Timmons states colorable equal-protection claims against Clark County and LVMPD. He alleges facts sufficient to show that there is a policy of treating Muslim inmates differently than inmates of other religions when deciding whether there is a sufficient number of inmates to have a class. In addition, he alleges facts sufficient to show that there is a policy wherein Muslim inmates in CCDC's South Tower are treated differently than similarly situated Muslim inmates in the North Tower by not being permitted to attend Islamic Services. Timmons's equal-protection claim will therefore proceed against Clark County and the LVMPD.

However, Timmons has not gone beyond conclusory allegations to show any other unconstitutional policies existed. He has not adequately alleged facts to show a *policy* of preventing inmates from obtaining religious literature. Merely making the vague allegation that the LVMPD hindered Timmons from obtaining religious literature is not sufficient to allege facts showing a policy of denying Muslim inmates religious literature. And as to Timmons's allegations concerning grievances, as I explained above, there is no constitutional right to a particular grievance process. He has also failed to allege facts sufficient to show a policy of retaliation. And vague, conclusory allegations that defendants were responsible for the abuse of inmate rights, oppressive tactics, and targeting Timmons for being Muslim are not sufficient to state a colorable claim. Because I previously informed Timmons that he needed to allege facts to

support his claims and told him what was required to plead municipal liability, I dismiss these portions of Count VI with prejudice.

### B.       Failure to train

Timmons's conclusory allegations that LVMPD and Clark County have failed to properly ensure that their staff are properly trained regarding the civil and human rights of detainees are insufficient to state a colorable claim. Timmons does not allege what training was inadequate in relation to particular tasks. He does not allege facts sufficient to show that any particular relevant training was inadequate or who was responsible for that inadequate training. And he does not allege facts sufficient to show that it was inadequate training that caused any particular violation. Instead, Timmons seems to suggest that it was officers' failure to follow their training rather than a failure to train that may have led to constitutional violations. Timmons also does not allege facts sufficient to show deliberate indifference by any of the defendants to any particular training inadequacy. Thus, he fails to state a colorable failure-to-train claim against any of the defendants, including the municipal defendants. I therefore dismiss the failure-to-train claims without prejudice.

## VIII.   Change of address

Timmons recently filed notice that he would be transferring from CCDC to a state prison,[114] and according to the Nevada Department of Corrections website, he is currently housed at HDSP. I therefore direct the Clerk of Court to send this order and the 18 USM-285 forms to Timmons at HDSP. I also order Timmons to file notice with the court within 30 days of

---

[114] ECF No. 10.

this order confirming that his address has changed to HDSP. Failure to do so may lead to dismissal of this action.[115]

## Conclusion

Accordingly, IT IS HEREBY ORDERED that:

- The following claims **MAY PROCEED**:
  - The Count I First Amendment free-exercise-of-religion claim against Polley;
  - The Count I conditions-of-confinement claim against Polley, Aramark, CCDC dietician, CO #J149450, CO Verduzco 7647, CO Estrada, Sgt. Cadet, and Sgt. Massucci;
  - The Count II equal-protection claims against CO Lewis, CO #J149450, CO Estrada, and CO Verduzco 7647;
  - The Count III free-exercise claims against Polley, CO Verduzco 7647, and Sgt. 8593;
  - The Count III retaliation claims against Polley, CO Verduzco 7647, and Sgt. 8593;
  - The Count I and Count II RLUIPA claims against Polley;
  - The Count III RLUIPA claim against Polley, CO Verduzco 7647, Sgt. 8593, and CO Lewis;
  - The Count III free-exercise and RLUIPA claims against Cpt. Peralta;

---

[115] Local Rule of Practice IA 3-1 ("An attorney or pro se party must immediately file with the court written notification of any change of mailing address, email address, telephone number, or facsimile number. The notification must include proof of service on each opposing party or the party's attorney. Failure to comply with this rule may result in the dismissal of the action, entry of default judgment, or other sanctions as deemed appropriate by the court.").

- The Count IV conditions-of-confinement claim, free-exercise claim, and RLUIPA claims against Clark County, the LVMPD, Sheriff Lombardo, and Cpt. Peralta (based on the alleged custom of denying Muslim inmates adequate food during Ramadan 2016);
- The Count IV RLUIPA and free-exercise of religion claims against Lt. Taylor;
- The Count V conditions-of-confinement, RLUIPA, free-exercise, retaliation, and equal-protection (based on alleged discrimination against Muslims regarding dietary accommodations and food storage) claims, against Polley, kitchen officer 5577, and Martinez;
- The Count VI conditions-of-confinement claim, RLUIPA, and free-exercise claims against Clark County, LVMPD, Cpt. Peralta, and Sheriff Lombardo (based on the alleged custom of not serving adequate quantities of Halal food during Ramadan 2017); and
- The Count VI equal-protection claims against Clark County and LVMPD.

- The following claims are **DISMISSED with prejudice and without leave to amend**:
  - The Count IV ADA and right-to-petition-the-government claims;
  - The Count IV policy claims;
  - The Count V class-of-one equal-protection claims;
  - The Count V redress-of-grievances claim; and
  - The Count VI claims based on vague allegations concerning policies about religious literature, grievances, and vague oppressive,

discriminatory, and abusive practices;

- The failure to train claims in Count IV and VI **are DISMISSED without prejudice.**

IT IS FURTHER ORDERED that any defendant not mentioned in this conclusion is dismissed from the action.

IT IS FURTHER ORDERED that the Clerk of Court **is directed to issue summonses** for Defendants Bonnie Polley, Aramark, Dietician of CCDC, CO Owens #J149450, CO Verduzco 7647, CO Estrada, Sgt. Cadet, Sgt. Massucci, CO Lewis, CO #J149450, Sgt. 8593; LVMPD, Sheriff Joe Lombardo, Cpt. Andrew Peralta, Lt. Taylor; kitchen officer 5577, Peggy Martinez, and Clark County, **AND DELIVER THE SAME**, to the U.S. Marshal for service. The Clerk **is also directed to send** to plaintiff 18 USM-285 forms and a copy of this order **at High Desert State Prison, addressed to Tolavius Timmons, 1209840**. The Clerk is **further directed to send** a copy of **the second-amended complaint [ECF No. 8]** and a copy of this order to the U.S. Marshal for service on defendants. Plaintiff will then have **30 days** to furnish to the U.S. Marshal the required USM-285 forms with relevant information for each defendant on each form. Within **20 days** after receiving from the U.S. Marshal a copy of the USM-285 forms showing whether service has been accomplished, plaintiff must file a notice with the Court identifying which defendants were served and which were not served, if any. If plaintiff wishes to have service again attempted on an unserved defendants, then a motion must be filed with the Court identifying the unserved defendants and specifying a more detailed name and/or address for said defendants, or whether some other manner of service should be attempted. The Clerk is **further directed to change** the name "Bonnie Polly" on the docket to "Bonnie Polley" and to issue the summons with the corrected spelling.

**IT IS FURTHER ORDERED** that plaintiff shall provide notice to the court of his change of address within 30 days of this order. Failure to do so may lead to dismissal of this action.

**IT IS FURTHER ORDERED** that plaintiff must serve upon defendants or, if appearance has been entered by counsel, upon the attorneys, a copy of every pleading, motion or other document submitted for consideration by the Court. Plaintiff must include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the defendants or counsel for the defendants. The Court may disregard any paper received by a district judge or magistrate judge that has not been filed with the clerk, and any paper received by a district judge, magistrate judge, or the clerk that fails to include a certificate of service.

Dated: January 29, 2019

_____
U.S. District Judge Jennifer A. Dorsey