# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TOLAVIUS TIMMONS,

    Plaintiff

v.

BONNIE POLLEY, et al.,

    Defendants

Case No.: 2:17-cv-00361-APG-NJK

**Order (1) Granting in Part the Moving Defendants' Motion for Summary Judgment, (2) Setting Deadlines for Further Action, and (3) Ordering Timmons to Show Cause Why His Claims Should Not Be Dismissed for Failure to Prosecute**

[ECF No. 50]

Plaintiff Tolavius Timmons brings this pro se civil rights case under 42 U.S.C. § 1983 based on events he alleges occurred while he was a pretrial detainee at the Clark County Detention Center (CCDC). After screening, the following claims remained pending:

- Count 1 free exercise of religion and RLUIPA against Bonnie Polley for failing to ensure adequate food during Ramadan 2016.

- Count 1 conditions of confinement against Polley, the CCDC Dietician, CO Estrada, Sergeant Franc Cadet, and Sergeant Massucci for providing inadequate amounts of food during Ramadan 2016.[1]

- Count 2 equal protection against CO Lewis, CO #J149450, CO Estrada, and CO Leonel Verduzco 7647 for providing meals and special treatment to non-Muslim inmates and depriving Timmons of the same treatment based on his Muslim faith.

/ / / /

/ / / /

---

[1] This claim was also allowed to proceed against Aramark, but I later granted Aramark's unopposed motion to dismiss. ECF No. 40.

• Count 2 RLUIPA against Polley**,** Verduzco, Sergeant 8593, and CO Lewis based on Timmons not being allowed to attend Jumu'ah services or receive certain religious materials.

• Count 3 retaliation against Polley, Verduzco, and Sergeant 8593 for denying Timmons participation in Islamic services after he filed grievances related to his religious rights.

• Count 3 free exercise and RLUIPA against Polley, Verduzco, Sergeant 8593, and Captain Andrew Peralta based on allegedly preventing Timmons from having religious books and against these same defendants (except Peralta) based on preventing Timmons from attending Jumu'ah services.

• Count 4 conditions of confinement, free exercise, and RLUIPA against Clark County, Las Vegas Metropolitan Police Department (LVMPD), Sheriff Lombardo, and Peralta, based on their alleged custom of denying Muslim inmates adequate food during Ramadan.

• Count 4 free exercise and RLUIPA against Lt. Yancey Taylor for participating in the denial of religious materials.

• Count 5 conditions of confinement, RLUIPA, and free exercise of religion against Polley, kitchen officer 5577, and Martinez for serving inadequate quantities of food during Ramadan in 2017.

• Count 5 equal protection against Polley, kitchen officer 5577, officer 12889, and Martinez for not fulfilling Muslim inmates' dietary needs during Ramadan but accommodating Jewish inmates' dietary needs during Passover.

• Count 5 equal protection against Polley, kitchen officer 5577, and Martinez based on non-Muslim inmates being allowed to store their food, but Muslin inmates were not.

- Count 5 First Amendment retaliation against Polley, kitchen officer 5577, officer 12889, and Martinez for serving him pork and denying him Halal daily trays because of his grievances and complaints.

- Count 6 conditions of confinement, free exercise, and RLUIPA against Clark County, LVMPD, Captain Peralta, and Sheriff Lombardo for a custom of failing to provide adequate Halal nutrition to Muslim inmates during Ramadan 2017.

- Count 6 equal protection against Clark County and LVMPD for a policy of treating Muslim inmates differently from inmates of other religions when deciding whether there are a sufficient number of inmates to hold a class or service.

Defendants LVMPD, Polley, Peralta, Taylor, Cadet, Verduzco, and Sheriff Lombardo move for summary judgment on all of Timmons' claims against them raising a variety of arguments, including that Timmons failed to exhaust his administrative remedies, that his claims fail on the merits, that RLUIPA does not allow for damages against the individual defendants, that there is no evidence of a custom of discrimination or disparate treatment, and that the individual defendants are entitled to qualified immunity.[2]  Timmons did not respond to the motion.

The parties are familiar with the facts, so I do not repeat them here except where necessary to resolve the motion.  I grant the defendants' motion as to Timmons' § 1983 claims because the individual defendants are entitled to qualified immunity and there is no evidence of a custom of discrimination or disparate treatment to support a *Monell*[3] claim against LVMPD.  I

---

[2] The defendants also requested sanctions because Timmons failed to attend his deposition.  As set forth in prior orders, the defendants did not comply with Federal Rule of Civil Procedure 37(d)(1)(B), so I deny the request for case-ending sanctions due to Timmons' failure to attend his deposition. ECF Nos. 53, 55.

[3] *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).

grant in part the defendants' motion as to Timmons' RLUIPA claims because he cannot obtain

damages against the individual defendants, there is no evidence LVMPD had a custom that

substantially burdened Timmons' religious exercise, and Timmons did not exhaust his RLUIPA

claims related to inadequate nutrition for Ramadan.  But I deny in part the defendants' motion as

to the RLUIPA claims related to denial of religious services and denial of religious books

because the defendants have not met their burden of showing the claims are unexhausted and

because they do not analyze those claims on the merits under the relevant law.  Finally, I order

Timmons to show cause why his claims against the remaining defendants should not be

dismissed for failure to prosecute.

## I. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of

the basis for its motion and identifying those portions of the record that demonstrate the absence

of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

burden then shifts to the non-moving party to set forth specific facts demonstrating there is a

genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th

Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a

genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and

/ / / /

1  reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of*
2  *Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

3      **A.    Exhaustion**

4      Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with
5  respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner
6  confined in any jail, prison, or other correctional facility until such administrative remedies as
7  are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion of administrative remedies prior
8  to filing a lawsuit is mandatory.[4] *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

9      The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548
10  U.S. 81, 90 (2006).  That means the inmate must "use all steps the prison holds out, enabling the
11  prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).
12  The inmate thus must comply "with an agency's deadlines and other critical procedural rules
13  because no adjudication system can function effectively without imposing some orderly structure
14  on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  But a prisoner exhausts his
15  administrative remedies "despite failing to comply with a procedural rule if prison officials
16  ignore the procedural problem and render a decision on the merits of the grievance at each
17  available step of the administrative process." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016).

18      Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007).
19  Consequently, the defendants bear the burden of proving the inmate failed to exhaust an
20  available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).
21  If the defendants do so, then the burden shifts to the inmate to show "there is something in his

22

23

---

[4] Although Timmons is no longer incarcerated, he filed the suit while he was still incarcerated, so
he was required to exhaust. *Talamantes v. Leyva*, 575 F.3d 1021, 1024 (9th Cir. 2009).

1 particular case that made the existing and generally available administrative remedies effectively

2 unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly

3 prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir.

4 2015) (quotation omitted).  The defendants bear the "ultimate burden" of proving a failure to

5 exhaust. *Id.*

6        Under CCDC's grievance procedure, detainees are directed to speak first with their

7 housing unit officer. ECF No. 50-13 at 35.  The detainee may then "address each level of [the]

8 chain of command, i.e., officer, sergeant, lieutenant, captain and deputy chief." *Id.*

9                 1.  Adequate Food and Unequal Treatment Ramadan 2016

10        Timmons filed a grievance in June 2016 about "not being properly fed" for six days. ECF

11 No. 50-6.  Cadet denied the grievance, stating that he did know what Timmons was complaining

12 about. *Id.*  There is no evidence Timmons appealed this decision.

13        Instead, it appears Timmons took Cadet up on his suggestion to explain further because

14 Timmons filed a grievance a few weeks later, stating that his food was being given to non-

15 Muslims, who were allowed to store the food in their rooms even though that was against the

16 rules. ECF No. 50-7.  He also explained that fasting "pertains to the time we eat and does not

17 mean less food." *Id.*  Kitchen officer 5577 responded that Timmons was receiving a sack meal at

18 night to make up for calories missed during daytime fasting. *Id.*  There is no evidence Timmons

19 appealed this grievance.  Timmons lists numerous grievances he filed in the months of June and

20 July 2016 related to meals during Ramadan 2016. ECF No. 8 at 7.  However, he presents no

21 evidence in support.  Nor does he state that he properly appealed any of those grievances or was

22 prevented from doing so.

23 / / / /

The defendants have met their initial burden of establishing that Timmons failed to exhaust his administrative remedies with respect to his claims related to the lack of food or unequal treatment of Muslim inmates being able to store food with respect to Ramadan 2016. Timmons has not presented evidence raising a genuine dispute that he exhausted his administrative remedies related to these claims.  I therefore grant the defendants' motion for summary judgment on counts 1, 2, and 4 based on lack of food or unequal treatment for Ramadan 2016.

### 2.  Islamic Programming and Retaliation

Timmons filed a grievance in September 2016 stating that he requested to be placed on the list for Jumu'ah but that he was skipped over in favor of a person who applied later than he did, yet was able to attend Jumu'ah before Timmons. ECF No. 50-17.  He also complained that when he tried to go to Jumu'ah after finally getting on the list, the tier officer (Verduzco) did not let him go. *Id.*  It is unclear who responded to this grievance, but that person stated that they do not necessarily process requests in order of when the detainees submits them, instead receiving stacks of requests about twice a week. *Id.*  That person also denied there was any retaliation because they had "no knowledge of your lawsuits or other personal business." *Id.*  As to Verduzco's alleged conduct, the person responding stated that if Timmons "wanted to attend the service, [he] should have lined up with everyone else." *Id.*[5]

Timmons filed another grievance a few days later, requesting to be put on the list for the Islamic programming for his tier or tower. ECF No. 50-18.  It is unclear from the signature who responded, but Timmons was advised that there was "no Jumah [sic] service for that tower.  It

---

[5] The defendants do not present an affidavit from Verduzco, so it is unclear whether Verduzco denies that he prevented Timmons from leaving his cell or, if he did prevent Timmons from leaving his cell and lining up, why he did so.

1   was suspended by the Imam due to lack of interest." *Id.*  The responder also stated that Timmons

2   was on the waitlist for an Introduction to Islam class. *Id.*

3          About a month later, Timmons filed another grievance in which he asked when Jumu'ah

4   would be held in the south tower or how long it would take to participate in religious services for

5   Muslims. ECF No. 50-19.  He suggested he was being retaliated against for telling Imams about

6   civil rights violations and he contended he was skipped over being placed in Jumu'ah because

7   other individuals who applied after him were allowed to attend before he was. *Id.*

8          Someone named D. Yada responded that the Introduction to Islam class was "suspended

9   by the Imam's [sic] until after the first of the year.  Also there has not been an intro to Islam class

10  . . . because we did not have the required minimum attendees.  Jumu'ah is the only Muslim

11  religious service we have.  Intro to Islam is educational and not classified as religious." *Id.*

12         Timmons filed another grievance in December 2016 asking to attend Jumu'ah and to

13  have a kosher meal because he did not get one his last two or three meals. ECF No. 50-20.  Yada

14  responded that Timmons had been advised previously there was no Jumu'ah and intro to Islam

15  had been suspended "per the Imams." *Id.*  He also advised Timmons to send a request to Polley

16  for a kosher tray. *Id.*

17         Although there is no evidence Timmons appealed any of the determinations he received,

18  the defendants have not met their burden of showing Timmons failed to exhaust his

19  administrative remedies with respect to these allegations because the defendants either do not

20  identify who signed the grievances or do not explain who Yada is.  I thus have no basis to

21  determine whether the deputy chief responded to the grievances.  If the deputy chief responded,

22  then there was no higher official to whom Timmons could have appealed to exhaust.

23  / / / /

### 3.  Receiving a Halal Tray in March 2017

Timmons filed a grievance in March 2017 stating that he did not receive a Halal tray for breakfast because he was not on the list to receive it. ECF No. 50-10.  He also complained that he had been denied access to Jumu'ah and Islam 101. *Id.*  Kitchen officer 5577 responded that religious diets expire every six months and that Timmons needed to reapply to Polley to have it reinstated. *Id.*  Timmons requested a tray from Polley and she approved it approximately six days later. ECF No. 8 at 27.  There is no evidence Timmons further appealed this grievance.  He therefore has not exhausted his administrative remedies with respect to any claim related to this grievance or the underlying facts.  Consequently, I grant the defendants' summary judgment motion as to any facts related to receiving a Halal tray or being denied access to Jumu'ah and Islam 101 in March 2017.

### 4.  Copy of a Book

On March 31, 2017, Timmons filed a grievance about not being given a book sent to him in the mail.[6] ECF No. 50-21.  It is unclear from the signature who responded,[7] but that person advised Timmons that he was "allowed to have those materials" if sent by an authorized book seller like Amazon or Barnes & Noble, but "what was sent to you was a copy of a book which per policy, we do not allow copies of books." *Id.*  Timmons appealed this determination to a captain on April 5. ECF No. 50-24 (stating "[n]ow I am escalating to the captain").  It is unclear

---

[6] The defendants do not provide an affidavit from a custodian of records or from anyone who responded to Timmons' requests.  As a result, the sequencing and nature of these grievances, as well as who responded to them, are confusing.  It is unclear whether Timmons is complaining about two different books (one sent from his family and one sent from a website he refers to as "lulu.com") or whether he is complaining about the same photocopied book. *Compare* ECF Nos. 50-21 through 50-23 *with* 50-24.

[7] Although it is unclear who responded, the evidence shows that person was of lower rank than a captain, given Timmons' own request to escalate the matter to a captain.

from the signature who responded, but that person reiterated the position that all publications must be sent directly from a book publisher or retailer and that Timmons' mail was returned because it was not sent from a book retailer. *Id.*

On April 1, Timmons filed another grievance claiming that a book his family sent consisted of legal and religious materials and did not violate any CCDC policy. ECF No. 50-22. It is unclear from the signature who responded, but that person stated that "replicated copies of books are not accepted.  Books must come from book distributor." *Id.*  On April 1, Timmons filed another grievance on the same issue. ECF No. 50-23.  Lt. Taylor responded that he spoke to Timmons in person on this issue and Timmons understood he would not receive copies of a book. *Id.*  Timmons did not further appeal this particular grievance.

The defendants have not met their burden of showing Timmons failed to exhaust his administrative remedies with respect to this claim because they do not identify who signed the grievances other than Lt. Taylor's response.  I thus have no basis to determine whether the deputy chief responded to them.  If he did, then there was no higher official to whom Timmons could have appealed to exhaust.

### 6.  Forced Participation in Passover

Timmons filed a grievance in April 2017 complaining that he was forced to participate in Passover because he was not getting bread on his Halal/kosher tray during Passover. ECF No. 50-11.  Kitchen officer 5577 responded that "staff in the kitchen have been notified." *Id.*  There is no evidence Timmons appealed this decision.  The defendants therefore have met their initial burden of establishing Timmons failed to exhaust and Timmons points to no evidence in response.  Consequently, I grant the defendants' summary judgment motion as to any facts related to forced participation in Passover or unequal treatment related to Passover.

1          7.  Ramadan 2017

2          Timmons claims that he submitted a grievance in May 2017 about the small quantities of

3  food being provided during Ramadan and the related inadequate calorie counts of those foods.

4  ECF No. 8 at 27.  Timmons contends Polley responded by stating she would talk to him, but she

5  did not. *Id.* at 27-28.  He also states that Sgt. 12899 responded that his concerns were being taken

6  seriously but he never received the information he requested regarding the nutritional

7  information for the food being served during Ramadan 2017. *Id.*

8          Timmons claims he submitted a grievance on June 3, 2017 complaining that he was not

9  getting enough food and that others were allowed to store food when he and other Muslims were

10  not. ECF No. 8 at 30.  Martinez responded that Timmons was receiving what was approved by

11  the facility. *Id.*  Timmons does not assert that he appealed this determination further, although he

12  states there were "other grievances that [he] sent after this one but LVMPD did not respond." *Id.*

13          The defendants have met their burden of showing Timmons did not exhaust his remedies

14  with respect to adequate food being provided for Ramadan 2017 or unequal treatment regarding

15  food storage in 2017.  Although Timmons contends that he sent grievances to which LVMPD did

16  not respond, he does not assert that he properly appealed any grievance, including the grievances

17  to which someone did respond.  Timmons has not presented evidence that would raise a genuine

18  dispute either that he properly exhausted or that he was prevented from doing so.  I therefore

19  grant the defendants' motion with respect to inadequate food or unequal treatment regarding

20  food storage for Ramadan 2017.

21          8.  Being Served Ham During Ramadan 2017

22          Timmons contends that on May 29, 2017, he submitted an emergency grievance to Lt.

23  Taylor because he received a ham sandwich for his Ramadan meal. ECF No. 8 at 28.  Officer

11

1    16047 called to the kitchen and allegedly was told that it was soy. *Id.*  Timmons asserts that the

2    next morning he showed the sandwich to a sergeant, who stated it was turkey. *Id.*  Timmons

3    disputed it was turkey and requested a picture be taken of it. *Id.*  The next day, Martinez

4    responded that CCDC does not serve ham. *Id.* at 29.  Timmons contends he tried to escalate this

5    issue but his grievance was "redirected to someone who would not even come look at" what he

6    received and the lieutenant "was never given the grievance or made aware of its existence." *Id.*

7    Timmons has not provided evidence of this grievance, even though by his own allegations

8    CCDC returned the white and yellow copies of this grievance to him. *Id.*

9         Timmons filed a grievance on May 31, claiming that he was being served ham during

10   Ramadan. ECF No. 50-12.  He also asserted that he was not sent a Ramadan meal that day. *Id.*

11   Kitchen officer 5577 responded that CCDC is a "pork free" facility and all of the food was

12   "chicken, turkey, or soy based." *Id.*  There is no evidence Timmons appealed this grievance.

13        The defendants have met their initial burden to show that Timmons did not properly

14   appeal either of his grievances related to the alleged ham.  Although Timmons arguably is

15   asserting he was prevented from appealing the grievance because the lieutenant was not advised

16   of the grievance, he filed a grievance on the same issue the next day, to which the kitchen officer

17   responded and Timmons did not appeal that determination.  Timmons presents no evidence that

18   he was frustrated from properly exhausting this second grievance on the same issue.  I therefore

19   grant the defendants' motion for summary judgment on the ham incident.

20        **B.  Section 1983 Claims**

21             1.  Qualified Immunity for the Individual Defendants

22        "Government officials are shielded from liability for civil damages insofar as their

23   conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) (quotation omitted).  To determine whether an official is entitled to qualified immunity, I must determine (1) "whether the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established at the time of the alleged misconduct." *Id.* (quotation omitted).  I may address these two inquiries in either order. *Pearson v. Callahan*, 555 U.S. 223, (2009).

Timmons "bears the burden of showing that the right at issue was clearly established." *Alston*, 663 F.3d at 1098.  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted)).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation omitted).

Because Timmons did not respond to the defendants' motion, he has not pointed to any clearly established law that put the individual defendants on notice that their conduct violated Timmons' rights.  He therefore has not met his burden to show his rights were clearly established.  As a result, the individual defendants are entitled to qualified immunity on Timmons' § 1983 claims.

**B.  *Monell* Liability**

A municipality or other local government unit cannot be held liable under § 1983 based on a respondeat superior theory of liability. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012).  Rather, a government entity may be held liable under § 1983 if the entity's policy, practice, or custom was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978)).

1    Timmons has not pointed to any evidence to support his allegations that LVMPD has a

2    custom of denying Muslim inmates adequate food during Ramadan.  He also has not pointed to

3    evidence to support his allegations that LVMPD has a custom of treating Muslim inmates

4    differently from inmates of other religions when deciding whether there are a sufficient number

5    of inmates to hold a class or service[8] or when deciding who may store food in their cells.  I

6    therefore grant the defendants' motion as to the § 1983 claims against LVMPD.

7    **C.  RLUIPA**

8    An individual sued in his or her individual capacity cannot be held liable for damages

9    under RLUIPA. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).  I therefore grant the

10    defendants' motion for summary judgment on Timmons' RLUIPA claims against the individual

11    defendants in their individual capacities.[9]

12    The defendants assert that Timmons sued the individual defendants only in their

13    individual capacities. ECF No. 50 at 29-30.  It is unclear on what basis the defendants make this

14    assertion because Timmons' second amended complaint form checks both individual and official

15    capacity for defendants Polley, Peralta, Cadet, Verduzco, and Cadet. ECF No. 8 at 3-4.

16    Timmons' complaint is not clear about in what capacity he is suing Taylor or Lombardo, but

17    there is no basis to conclude he was suing these individuals only in their individual capacities.

18    The defendants assert that a RLUIPA claim may proceed "only for injunctive relief

19    against defendants acting within their official capacities." ECF No. 50 at 29.  However, the case

20    on which the defendants rely presents that rule in the context of Eleventh Amendment immunity.

21    _____

22    [8] Additionally, there is no evidence Timmons ever filed a grievance related to the alleged
disparate treatment in determining whether there were a sufficient number of inmates to
participate in religious services.  Consequently, this claim is also unexhausted.

23    [9] To the extent Timmons was seeking injunctive relief against any defendant under RLUIPA,
those claims are moot because Timmons is no longer in custody at CCDC.

1  *See* ECF No. 50 at 29 (citing *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1114 (9th Cir. 2010)

2  for the proposition that the "Eleventh Amendment bars [a prisoner's] suit for official-capacity

3  damages under RLUIPA").  LVMPD does not explain why its employees and officials would be

4  entitled to invoke Eleventh Amendment immunity. *See Centro Familiar Cristiano Buenas*

5  *Nuevas v. City of Yuma*, 651 F.3d 1163, 1168 (9th Cir. 2011) (stating a RLUIPA claim for

6  damages may lie against a municipality).

7         Under RLUIPA, "[n]o government shall impose a substantial burden on the religious

8  exercise of a person residing in or confined to an institution, as defined in section 1997 of this

9  title, even if the burden results from a rule of general applicability, unless the government

10  demonstrates that imposition of the burden on that person . . . (1) is in furtherance of a

11  compelling governmental interest; and (2) is the least restrictive means of furthering that

12  compelling governmental interest." 42 U.S.C. § 2000cc-1(a).  The Act defines "government" to

13  mean (i) a State, county, municipality, or other governmental entity created under the authority

14  of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in

15  clause (i); and (iii) any other person acting under color of State law." 42 U.S.C. § 2000cc-

16  5(4)(A).

17         Timmons "bears the initial burden of going forward with evidence to demonstrate a

18  prima facie claim that [the defendants'] conduct constituted "a substantial burden on the exercise

19  of his religious beliefs." *See Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005)

20  (citing 42 U.S.C. § 2000cc–2(b)).  Conduct imposes a substantial burden on religious exercise if

21  it is "a significantly great restriction or onus upon such exercise," or if it puts "substantial

22  pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (quotation

23  omitted).

I grant the defendants' motion on Timmons' RLUIPA claims in counts 4 and 6 against LVMPD for the same reasons as his *Monell* claims.  Timmons has presented no evidence that LVMPD had a custom of not providing adequate food during Ramadan.

However, I deny the defendants' motion for summary judgment on Timmons' RLUIPA claims for which the defendants were unable to demonstrate the claims were unexhausted because the defendants do not address the RLUIPA claims under the proper law.  The defendants incorrectly state that Timmons sued the individual defendants in only their individual capacities, and they assume (without citation to authority or analysis) that LVMPD can be liable under RLUIPA only for a custom or practice.  Because the defendants have not adequately supported their motion with respect to these claims, I deny it.

It appears that the defendants may be able to show the claims are unexhausted or that they fail on the merits under RLUIPA.  Rather than proceed to trial on potentially meritless claims, I will extend the dispositive motion deadline.

**C.  Remaining Defendants**

Defendants Clark County, the Dietician, Estrada, Martinez, Officer 5577, Officer Owens #J149450, Officer Lewis, Sergeant 8593, and Sergeant Massucci have not appeared in this action.  Service was never accomplished on any of these defendants except Clark County. ECF Nos. 13, 16.  Clark County was served on February 28, 2019. ECF No. 13 at 3.  Since that time, Timmons has taken no action to prosecute this case against any of these defendants.  I therefore order Timmons to show cause why his claims against these defendants should not be dismissed for failure to prosecute.

/ / / /

/ / / /

16

## II. CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 50) is GRANTED in part** as set forth in this order.

I FURTHER ORDER that by December 4, 2020, plaintiff Tolavius Timmons shall show cause in writing why his remaining claims against defendants Clark County, the Dietician, Estrada, Martinez, Officer 5577, Officer Owens #J149450, Officer Lewis, Sergeant 8593, and Sergeant Massuci should not be dismissed for failure to prosecute.  Failure to respond will result in dismissal of these claims with prejudice.

I FURTHER ORDER that the dispositive motion deadline is extended to December 7, 2020.  If no summary judgment motions are filed by that date, then the proposed joint pretrial order is due by December 28, 2020.

DATED this 10th day of November, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE